29 So.3d 750 (2010)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Bobby B. DeLAUGHTER.
No. 2008-JP-00460-SCT.
Supreme Court of Mississippi.
March 4, 2010.
*751 Darlene D. Ballard, attorney for appellant.
Cynthia H. Speetjens, attorney for appellee.
EN BANC.
GRAVES, Presiding Justice, for the Court:
¶ 1. This matter is before the Court on the Motion to Dismiss Order of Interim Suspension filed by the Mississippi Commission on Judicial Performance (the Commission).

FACTS AND PROCEDURAL HISTORY
¶ 2. The Commission previously filed a Petition for Interim Suspension of Circuit Court Judge Bobby D. [sic] DeLaughter and a supporting brief with this Court as a result of two pending judicial complaints. Those formal complaints, Numbers 2008-022 and 2008-027, alleged that DeLaughter committed multiple counts of judicial misconduct in two separate cases, Wilson v. Scruggs, Cause No. 251-94-582CIV, and Kirk v. Pope, 973 So.2d 981 (Miss.2007). This Court granted the petition for interim suspension on March 28, 2008. Thereafter, DeLaughter was indicted on federal charges of bribery, conspiracy, mail fraud and obstruction of justice. See U.S. v. DeLaughter, No. 3:09CR002 (N.D.Miss. 2009). On July 28, 2009, DeLaughter entered a guilty plea to Count Five of the federal indictment. Pursuant to this plea agreement, DeLaughter admitted his guilt to charges of "obstructing, influencing and impeding an official federal corruption investigation and grand jury proceeding. ..." On July 30, 2009, DeLaughter resigned from office.
¶ 3. Prior to DeLaughter's sentencing on November 13, 2009, the Commission filed this Motion to Dismiss Order of Interim Suspension on August 18, 2009. As a basis for the motion, the Commission states *752 that, "[i]n exchange for the dismissal of the underlying Formal Complaints pending before the Commission, [DeLaughter] agrees that he will not seek judicial office or otherwise serve in any judicial capacity at any time in the future." The federal plea agreement attached as an exhibit to the Commission's motion does not contain any provision wherein DeLaughter agrees never to seek judicial office in the future. Likewise, DeLaughter's letter of resignation does not contain any statement indicating his agreement not to seek judicial office in the future. The only evidence before this Court of any such agreement with DeLaughter is the Commission's statement in the motion to dismiss.[1]

DISCUSSION
¶ 4. In Mississippi Commission on Judicial Performance v. Martin, 2008 WL 518227 (Miss. Feb. 25, 2008), reh'g granted and superseded by 995 So.2d 727 (Miss. 2008), this Court denied, by order, a similar motion. In Martin, the Commission filed a formal complaint against Justice Court Judge Judy Martin for judicial misconduct. Simultaneously, the Commission petitioned this Court for the interim suspension of Martin, pending the continuing investigation of the complaint. Thereafter, the Commission petitioned this Court to allow it to withdraw the petition for interim suspension, as counsel for the Commission and Martin had entered into a memorandum of understanding resolving the matter. This Court refused to allow the Commission to withdraw the petition for interim suspension, finding, in effect, that the Commission's mere request provided an insufficient basis to withdraw the motion. On joint motion for rehearing, which was granted, this Court dismissed the order as moot and found that: "[W]here the Commission finds judicial misconduct ... failure to report such findings to this Court, and disposal of the violation by agreement, settlement, or memorandum of understanding between the respondent and the Commission, are beyond the Commission's constitutional authority." Martin, 995 So.2d at 730. This Court also said:
The constitution grants the Commission no direct authority or power to order punishment. Nor does it authorize the Commission to enter into a settlement agreement or memorandum of understanding which bypasses its constitutional mandate to make recommendations for punishment to this Court. That said, the Commission is certainly free to agree to recommend to this Court approval of a memorandum of understanding which is supported by the facts.
In the case before us today, we are told by the Commission that "counsel for the Commission and the respondent have entered into an agreement whereby the issues have been resolved in a manner satisfactory to all parties." We are further told that the Commission and Judge Martin entered into a Memorandum of Understanding which "the Commission accepted by unanimous decision." We find and hold today that, where the Commission finds judicial misconduct within one of the five categories under Section 177A, failure to report such findings to this Court, and disposal of the violation by agreement, settlement, or memorandum of understanding between the respondent and the Commission, are beyond the Commission's constitutional authority.
*753 Martin, 995 So.2d at 730 (Dickinson, J.).[2] Moreover, this Court found that, although the memorandum of understanding did not require that the order of interim suspension be dismissed, the contents of said memorandum of understanding were taken into account in deciding that the order should be dismissed as moot. Id. at 731.
¶ 5. In the instant case, the Commission has exceeded its constitutional authority by failing to comply with the provisions as outlined above in Martin. This Court has neither been presented with nor asked to approve any agreement between the Commission and DeLaughter. What this Court has been presented with are admitted acts of criminal and judicial misconduct. This Court cannot ignore the serious, willful nature of the admitted acts of criminal and judicial misconduct.[3] Further, this Court cannot allow the dismissal of formal complaints in two separate cases pursuant to DeLaughter's resignation or any mere agreement not to seek judicial office in the future.
¶ 6. The Mississippi Constitution provides the following:
On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.
Miss. Const. art. 6, § 177A. Mississippi Code Section 25-5-1 provides for the removal of any public officer convicted of a crime in this State. Miss.Code Ann. § 25-5-1 (Rev.2006). To be clear, this opinion does not rely on Section 25-5-1, but mentions it to note the uniformity of this section with Section 177A, on which we rely. Accordingly, we find it unnecessary to address Chief Justice Waller's lengthy analysis of Section 25-5-1. However, we will briefly discuss the lack of consistency in Chief Justice Waller's dissent. Mississippi Commission on Judicial Performance Rule 6(A)(1) notes that:
Under Section 175, Mississippi Constitution of 1890, and Section 25-5-1, Mississippi Code of 1972, public officers convicted of a crime in this state shall be removed from office. Section 25-5-1 was amended in 1979 to provide for removal upon conviction of certain crimes in federal courts and the courts of other states as well as in state courts.
*754 Miss. Comm'n on Judicial Performance, Rule 6(A)(1), n. 1. Further, this Court has held that "[n]othing in Section 53 [Miss. Const. art. 4] or 177A, the two sections which specifically provide for removal of judges, suggests that they are exclusive." In re Higginbotham, 716 So.2d 631, 635 (Miss.1998) (Waller, C.J., concurring).
¶ 7. The dissents erroneously interpret the constitutional provision above as meaning that this Court cannot remove a judge unless the Commission actually recommends removal, suspension, fine, public censure or reprimand. The dissenting opinions offer no applicable authority for such a proposition. The dissents' failure to cite any applicable authority is telling. Section 177A does not state "on recommendation of the commission ... `for disciplinary action,'" nor does it say, "on recommendation of the commission ... `for some type of sanction,'" as stated by the dissent. Further, this Court is without the authority to amend the Constitution to add such language.
¶ 8. The dissents assert that the Commission has failed to submit any recommendation for sanction to this Court, and, therefore, that we have no authority to sanction DeLaughter. It borders on absurdity to opine that this Court is powerless to discipline a judge absent a recommendation from the Commission to impose a sanction. Notwithstanding that erroneous conclusion by the dissents, the Commission has made the recommendation to dismiss the order of interim suspension because the Commission has made an agreement with DeLaughter to dismiss the underlying judicial complaints. Despite that recommendation, the dissents conclude that we are without authority to impose sanctions "at this time." However, the judicial complaints against DeLaughter are pending "at this time." The Commission is recommending dismissal of those judicial complaints "at this time." No other judicial complaints involving DeLaughter are pending before this Court "at this time." Hence, the matter of disciplining DeLaughter is appropriately handled "at this time."
¶ 9. This is a situation which is controlled by Martin, 995 So.2d at 730, and which falls under this Court's constitutional authority. In addition to the discussion of Martin, as set out above and which the dissent appears to ignore, this Court has consistently held:
In a judicial misconduct proceeding, this Court conducts a de novo review. Miss. Comm'n on Judicial Performance v. Thompson, 972 So.2d 582, 585 (Miss. 2008). This Court also affords "deference to the Commission's recommendations when the Commission's findings are based on clear and convincing evidence." Id. Notwithstanding this deference, this Court is the sole authority for the imposition of sanctions in cases involving judicial misconduct and, therefore, we are obligated to conduct an independent inquiry in each case. Miss. Comm'n on Judicial Performance v. Carr, 990 So.2d 763, 766 (Miss.2008). This Court is not bound by the Commission's findings, and we may impose additional sanctions. Miss. Comm'n on Judicial Performance v. Boland, 975 So.2d 882, 888 (Miss.2008).
Miss. Comm'n on Judicial Performance v. Osborne, 16 So.3d 16, 18-19 (Miss.2009).
¶ 10. Further, this Court repeatedly has imposed sanctions not recommended by the Commission. See In re: Collins, 524 So.2d 553 (Miss.1987) (Removing county court judge where Commission recommended public reprimand); and In re: Brown, 458 So.2d 681 (Miss.1984) (Removing justice court judge where Commission recommended public reprimand and fine). See also Miss. Comm'n on Judicial Performance *755 v. Osborne, 977 So.2d 314, 328 (Miss.2008) (Graves, J., dissenting).
¶ 11. This Court has established that it is not limited in its available constitutional sanctions against a judge when the judge either resigns from office or is voted out by constituents. See Miss. Comm'n on Judicial Performance v. Osborne, 16 So.3d 16 (Miss.2009) (Judge Solomon Osborne, who had resigned from office more than a year earlier, was removed from office by this Court for judicial misconduct and was assessed costs of proceedings.). Further, this Court previously has removed judges no longer in office.
[I]n Mississippi Commission on Judicial Performance v. Dodds, 680 So.2d 180 (Miss.1996), this Court found that the judge "should be removed from the bench." Id. at 201. This finding was made notwithstanding the fact that the subject judge had chosen not to seek reelection to judicial office and thus was no longer in office at the time of this Court's decision to remove him from office. Id. at 182 n. 1. Of significant import in today's case is the following language found in Dodds, in which Justice Banks, writing for the majority, stated:
Floyd Dodds was not a candidate for reelection in the 1995 elections and, therefore, left office in January 1996. It follows that this case is moot insofar as it requires that he leave office. We conclude, however, that there are substantial reasons for bringing this matter to a conclusion with a decision on the merits. First, one should not be able to preclude discipline by the simple expedient of resigning or otherwise voluntarily leaving office. See In re the Matter of Weeks, 134 Ariz. 521, 658 P.2d 174 (1983). Additionally, judicial conduct is a matter of great public interest and our decisions serve as a guide for the entire judiciary and to preserve the public confidence in it. In re Yaccarino, 101 N.J. 342, 502 A.2d 3, 30-31 (1985); Matter of Probert, 411 Mich. 210, 308 N.W.2d 773, 776 (1981); Judicial Inquiry and Review Bd. v. Snyder, 514 Pa. 142, 523 A.2d 294, 298 (1987).

Dodds, 680 So.2d at 182 n. 1. See also Miss. Comm'n on Judicial Performance v. Brown, 918 So.2d 1247, 1256, 1259 (Miss.2005) (judge removed from office although he "claim[ed] he [would] not seek another term.").
... Therefore, we find that in today's case, Osborne III, the appropriate sanction is suspension from office for a period of one year and the assessment of costs. Again, we find this sanction to be in keeping with the logic expressed in Dodds for the imposition of a sanction of removal (or in this case, suspension), even though the judge chose to resign from judicial office prior to this Court's decision. Dodds, 680 So.2d at 182 n. 1.
Miss. Comm'n on Judicial Performance v. Osborne, 11 So.3d 107, 117-118 (Miss. 2009). Justice Dickinson, concurring in part, dissenting in part, stated: "Although I agree with the majority's conclusions concerning all other matters, I cannot agree that Judge Osborne may be punished for making a political speech." Id. at 123.
¶ 12. In accordance with our precedent, DeLaughter's resignation is of no effect as regards sanctions by this Court. Based upon the seriousness of his admitted criminal acts and judicial misconduct, DeLaughter shall be removed from office.

CONCLUSION
¶ 13. For these reasons, this Court removes Bobby DeLaughter from the office of Circuit Court Judge of Hinds County, and directs that DeLaughter shall pay any *756 costs of this proceeding. Further, the Motion to Dismiss Order of Interim Suspension filed by the Commission is hereby dismissed as moot.
¶ 14. The Clerk of this Court is directed to mail a copy of this opinion to the Hinds County Board of Supervisors and to the Clerks of the Hinds County Chancery, Circuit, and Justice Courts.
¶ 15. FORMER HINDS COUNTY CIRCUIT COURT JUDGE BOBBY B. DELAUGHTER IS HEREBY REMOVED FROM OFFICE AND SHALL PAY ALL COSTS OF THIS PROCEEDING. THE MOTION TO DISMISS ORDER OF INTERIM SUSPENSION IS HEREBY DISMISSED.
CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY DICKINSON, J. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER, C.J.
WALLER, Chief Justice, dissenting:
¶ 16. I concur in the majority's conclusion that the Commission on Judicial Performance is absolutely without constitutional authority to dispose of a judicial-performance complaint by agreement between the respondent and the Commission. See Maj. Op. at ¶ 4 (citing Miss. Comm'n on Judicial Performance v. Martin, 995 So.2d 727 (Miss.2008)) (holding that "[t]he constitution ... does [not] authorize the Commission to enter into a settlement agreement or memorandum of understanding which bypasses its constitutional mandate to make recommendations for punishment to this Court"). However, I must respectfully dissent from the majority's decision to remove DeLaughter from the office of Circuit Court Judge of Hinds County in this proceeding. This Court does not have the authority, pursuant to the Mississippi Constitution or otherwise, to remove DeLaughter permanently from office at this time.
¶ 17. It is undisputed that DeLaughter pleaded guilty to "obstructing, influencing and impeding an official federal corruption investigation and grand jury proceeding...." Based on his plea agreement, DeLaughter has resigned from office. The federal court has accepted DeLaughter's guilty plea, and DeLaughter has been convicted of a felony.[4] The Commission asserts that, "[i]n exchange for the dismissal of the underlying Formal Complaints pending before the Commission, [DeLaughter] [has agreed] that he will not seek judicial office or otherwise serve in any judicial capacity at any time in the future." Thus, the Commission seeks, in this proceeding, that this Court dismiss DeLaughter's interim suspension. Because we have held today that the Commission is without authority to enter into such an agreement, neither party to the agreement is bound by its contractual obligations, and DeLaughter's promise never *757 to seek judicial office in the future is of no effect. Hence, the majority seeks in this proceeding, sua sponte, to remove DeLaughter permanently from office as circuit court judge.
¶ 18. However, notwithstanding DeLaughter's felony conviction, this Court does not have the constitutional authority to do so at this time. As the majority states, Section 177A of the Mississippi Constitution provides that:

On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.
Miss. Const. art. 6, § 177A (emphasis added). Hence, before this Court may take disciplinary action against a judge pursuant to Section 177A, we must receive a "recommendation of the commission on judicial performance" for some type of sanction, which may be that we "remove from office, suspend, fine or publicly censure or reprimand" the judge. Id.
¶ 19. Here, the Commission has not submitted to this Court any recommendation for disciplinary action against DeLaughter. Pursuant to Section 177A, therefore, we do not have the authority to remove DeLaughter from office as circuit judge at this time.[5]
¶ 20. That is not to say that this Court must follow the Commission's recommendation to the letter, if such a recommendation is made. See Miss. Comm'n on Judicial Performance v. Thompson, 972 So.2d 582 (Miss.2008).[6] We have recognized previously that "where the Commission on Judicial Performance recommends discipline of a judge short of removal from office, this Court has the constitutional authority and responsibility to review the matter independently and, if it feels such is required by law, to order the judge removed from office." In re Collins, 524 So.2d 553, 558 (Miss.1987) (citing In Re Brown, 458 So.2d 681 (Miss.1984)) (emphasis added). We went on to explain that:
It has been adjudicated and recognized that the Mississippi Commission on Judicial Performance does not have the *758 authority to impose sanctions upon a judge, only to make recommendations. The Mississippi Supreme Court has the sole responsibility and authority to impose the sanctions. If such responsibility and authority were dependent upon the recommendations of the Commission, Section 177A of the Mississippi Constitution of 1890, as amended, and statutes and rules enacted pursuant thereto would be meaningless and would accomplish nothing in working toward proper judicial performance. We hold that, having acquired jurisdiction, the Mississippi Supreme Court has full jurisdiction to increase or diminish sanctions based upon its review of the record made before the Commission.
Id. at 560. Hence, we may exercise our independent judgment and remove a judge from office even if the Commission recommends lesser sanctions.
¶ 21. However, in the instant case, the Commission has made no recommendation for sanctions whatsoever.[7] It seeks only to have DeLaughter's interim suspension dismissed  which is no sanction at all  pursuant to an agreement which we already have held the Commission was without constitutional authority to enter into. Hence, we are not empowered to remove DeLaughter, on our own motion, at this time.
¶ 22. The majority also cites Mississippi Code Section 25-5-1 for the proposition that this Court may remove any public officer convicted of a felony in this State. See Maj. Op. at ¶ 5 (citing Miss.Code Ann. § 25-5-1 (Rev.2006)). However, Section 25-5-1 confers no such power upon this Court under the circumstances of this case. Specifically, Section 25-5-1 provides that:
If any public officer, state, district, county or municipal, shall be convicted or enter a plea of guilty or nolo contendere in any court of this state or any other state or in any federal court of any felony other than manslaughter or any violation of the United States Internal Revenue Code, of corruption in office or peculation therein, or of gambling or dealing in futures with money coming to his hands by virtue of his office, any court of this state, in addition to such other punishment as may be prescribed, shall adjudge the defendant removed from office; and the office of the defendant shall thereby become vacant. If any such officer be found by inquest to be of unsound mind during the term for which he was elected or appointed, or shall be removed from office by the judgment of a court of competent jurisdiction or otherwise lawfully, his office shall thereby be vacated; and in any such case the vacancy shall be filled as provided by law.
When any such officer is found guilty of a crime which is a felony under the laws of this state or which is punishable by imprisonment for one (1) year or more, other than manslaughter or any violation of the United States Internal Revenue Code, in a federal court or a court of competent jurisdiction of any other state, the Attorney General of the State of Mississippi shall promptly enter a motion for removal from office in the circuit court of Hinds County in the case of a state officer, and in the circuit court of the county of residence in the case of a district, county or municipal officer. *759 The court, or the judge in vacation, shall, upon notice and a proper hearing, issue an order removing such person from office and the vacancy shall be filled as provided by law.
Miss.Code Ann. § 25-5-1 (Rev.2006) (emphasis added).
¶ 23. Circuit court judges are constitutional officers. Miss. Const. art. 6, § 153. They are elected by the people for fixed terms of office. Id. By Section 177A of the Constitution, they may be removed from office when convicted of a felony, upon recommendation by the Commission. It may be true that the constitutional methods of removing some public officers are "put in operation and made more effective" by statute. See Ex parte Lehman, 60 Miss. 967, 1883 WL 3942, *3 (1883) (explaining that the method of removing circuit clerks pursuant to article 6, section 26 of the Constitution of 1868 is put into operation and made more effective by Section 417 of the Code of 1880). However, regarding this Court's authority to remove an elected judge from office, Section 177A's removal procedure is the exclusive method by which this Court may do so. And as already discussed, we may not remove DeLaughter pursuant to Section 177A in the absence of a request for sanctions by the Commission.
¶ 24. Furthermore, even if Section 25-5-1 could override the requirements of Section 177A, this Court may not remove DeLaughter pursuant to Section 25-5-1 anyway. The first paragraph of Section 25-5-1 applies to a public officer who "shall be convicted or enter a plea of guilty or nolo contendere ... of any felony[,]" whereas the second paragraph applies to a public officer who "is found guilty of a crime which is a felony[.]" Miss.Code Ann. § 25-5-1 (Rev.2006) (emphasis added). These two provisions provide in clear terms that the procedure for removal of a public officer who pleads guilty to a felony is different from the procedure for removal of an officer who goes to trial and is found guilty by a jury.
¶ 25. However, both procedures must be accompanied by the required due-process protections. Specifically, a public officer who is "found guilty" by a jury may not be removed from office unless the Attorney General files a motion for removal in the appropriate court, that court gives notice and holds a proper hearing on the motion, and then the court "issue[s] an order removing such person from office." Miss.Code Ann. § 25-5-1 (Rev.2006). These due-process requirements, contained in Section 25-5-1's second paragraph, are necessary to protect such a public officer from the unconstitutional deprivation of the property right embodied in his or her official position.
¶ 26. At first glance, however, it appears from the first paragraph of Section 25-5-1 that no such procedural, due-process protections are afforded to a public officer who enters a plea of guilty or nolo contendere to a felony. Miss.Code Ann. § 25-5-1 (Rev.2006). In fact, the statute states that, when such an officer pleads guilty, "any court of this state ... shall adjudge the defendant removed from office." Id. (emphasis added). However, the phrase "any court of this state" is not as broad as it seems. That language appears once before in the statute, when it refers to "any public officer, state, district, county or municipal" who "shall be convicted or enter a plea of guilty or nolo contendere in any court of this state. ..." Miss. Code Ann. § 25-5-1 (Rev.2006) (emphasis added). Hence, as it does in the first instance, I interpret the second use of the phrase, "any court of this state," to refer to the court by which the officer actually is convicted. In other words, when a public officer enters a plea of guilty or nolo contendere *760 to a felony in "any court of this state," that court "shall adjudge the defendant removed from office." Id.[8]
¶ 27. This interpretation of Section 25-5-1 renders the statute constitutional because, pursuant to the felony proceedings in that court, the defendant necessarily has been afforded his or her constitutional due-process protections. Section 25-5-1 puts the public officer on notice that, "in addition to such other punishment as may be prescribed, [the court by which the defendant is convicted] shall adjudge the defendant removed from office [as well]." Miss.Code Ann. § 25-5-1 (Rev.2006). And the plea hearing held in that court affords the public officer the required opportunity to be heard, to challenge or contest that possible punishment. Hence, the first paragraph of Section 25-5-1 passes constitutional muster only when the court that adjudges the public officer removed from office is the same court that actually convicted the officer of a felony.[9]
¶ 28. If possible, a court should construe statutes so as to render them constitutional rather than unconstitutional. City of Gulfport v. Orange Grove Utilities, Inc., 735 So.2d 1041, 1044 (Miss.1999) (citing Cities of Oxford, Carthage, Louisville, Starkville, and Tupelo v. Ne. Miss. Elec. Power Ass'n, 704 So.2d 59, 65 (Miss.1997)). Were this Court to use Section 25-5-1 to remove DeLaughter in this proceeding, without the proper notice and hearing, we would be violating DeLaughter's procedural due-process rights, and we necessarily would be interpreting and applying Section 25-5-1 in a manner that makes it unconstitutional. I am unwilling to interpret Section 25-5-1 to require a court of this state to deprive an elected judicial officer of his or her minimum, constitutional due-process protections.
¶ 29. When DeLaughter joined in the Commission's recommendation to this Court to dismiss his interim suspension, no recommendation for sanctions was made. Thus, neither DeLaughter nor the Commission had any notice, much less a hearing on the subject, that one potential result of these proceedings would be DeLaughter's removal from office. The Constitution has established a procedure by which this Court may remove a judge from office, a procedure we are duty-bound to follow. Miss. Const. art. 6, § 177A. Therefore, I must dissent from the majority's sua sponte decision to remove DeLaughter from office as circuit court judge in the absence of a recommendation for any sanctions from the Commission on Judicial Performance and without affording DeLaughter his minimum due-process rights.
DICKINSON, J., JOINS THIS OPINION IN PART.
DICKINSON, Justice, dissenting:
¶ 30. Although the action taken by the majority is appealing, I simply cannot join *761 in a fiction that purports to remove from office a judge who has already resigned. I find no legal or logical purpose in doing so, other than for this Court to make a public statement through its published opinion that it does not approve of Bobby DeLaughter's conduct. To be sure, I do not approve of his conduct and, for the sake of absolute clarity, I would vote to remove him  if he were still in office. But he is not.
¶ 31. The majority is correct that this Court is limited only by the Constitution as to available punishment for a judge, that is, we have authority to order punishment more severe than that recommended by the Mississippi Commission on Judicial Performance, so long as the punishment we order is listed in Section 177A of the Constitution. However, Chief Justice Waller is correct in his view that the Constitution  by the specific language cited in his dissent  requires us to wait until the Commission recommends some punishment before we can act.[10] In the case before us today, the Commission has recommended nothing which, in my judgment, reflects its understanding that a judge who has already resigned from office cannot be removed from office.
¶ 32. In Mississippi Commission on Judicial Performance v. Martin, 995 So.2d 727 (Miss.2008), this Court entered an order of interim suspension, as requested by the Commission on Judicial Performance. After Judge Martin resigned from office, we did not remove her from office, but rather disposed of the case by stating: "Because Judge Martin has resigned her office, we find the order of interim suspension should be, and hereby is, moot." Id. at 731.
¶ 33. For the reasons stated, I dissent from the majority and join, in part, Chief Justice Waller's dissent.
WALLER, C.J., JOINS THIS OPINION IN PART.
NOTES
[1] Chief Justice Waller's dissenting opinion goes so far as to say that the parties are not bound by the "contractual obligations" of this "agreement" because they did not have the authority to enter into an agreement. However, again, the record before us contains no such agreement.
[2] In his dissenting opinion here, Justice Dickinson says that this Court "entered an order of interim suspension, as requested by the Commission" in Martin. However, as stated previously herein, in Martin, the Commission petitioned this Court to withdraw its petition for interim suspension before any order of interim suspension was ever entered. This Court denied the Commission's request to withdraw the petition for interim suspension, and then months later this Court ordered the interim suspension of Martin.
[3] We note that in the supporting brief to the petition for interim suspension, the Commission acknowledged that the charges "are very serious. The public's confidence in the integrity and impartiality of the entire judicial system is at stake. A suspension would send a clear message to the Respondent, the judiciary and the citizens of Mississippi of the high ethical standards required of our judges and of the importance of the integrity and impartiality of our judiciary."
[4] The record before us in this proceeding contains DeLaughter's signed plea agreement, in which he pleaded guilty to obstruction charges. Although DeLaughter's conviction and eighteen-month prison sentence have been widely reported in the media, the record before us in this proceeding includes no evidence that the federal court has accepted DeLaughter's guilty plea or that DeLaughter has, in fact, been convicted of a felony and sentenced therefor. Nonetheless, we may take judicial notice of the proceeding currently before this Court in The Mississippi Bar v. Bobby B. DeLaughter, No. 2009-BD-01903-SCT. The record in that case includes the federal court's Judgment in Criminal Case No. 3:09CR00002-002, filed on November 20, 2009, and signed by Judge Davidson, convicting DeLaughter of the felony charge of attempted obstruction of justice.
[5] The majority also states that this Court "is not limited in its available constitutional sanctions against a judge when the judge ... resigns from office. ..." See Maj. Op. at ¶ 10 (citing Miss. Comm'n on Judicial Performance v. Osborne, 16 So.3d 16 (Miss.2009)). The judge in Osborne had resigned before this Court ordered him removed from office. Osborne, 16 So.3d at 25. However, this Court removed the judge from office only upon the recommendation by the Commission. See Id. at 21 (stating the second issue as "Whether Judge Osborne should be removed from office... as recommended by the Commission") (emphasis added).
[6] This Court conducts a de novo review of judicial-misconduct proceedings, while affording deference to the Commission's recommendations when the Commission's findings are based on clear and convincing evidence. While we do give great deference to the Commission's findings, we also are charged to render an independent judgment. In essence, this Court serves as the "the trier of fact," since we have the sole power to impose sanctions in judicial-misconduct cases. Thompson, 972 So.2d at 585 (internal citations and quotations omitted).
[7] The majority cites a multitude of cases for the proposition that this Court may remove a judge from office without a specific recommendation for removal by the Commission. See Maj. Op. at ¶ 9. However, in every single one of those cases, the Commission had at least recommended some form of sanctions, and this Court simply exercised its independent authority to increase the sanction and order the judge's removal from office.
[8] Similarly, a public officer convicted of a misdemeanor or willful neglect of duty "shall be removed from office, and otherwise punished as may be prescribed by law" by the court that convicts him. See Miss. Const. art. 6, § 175 (1890).
[9] When such a public officer pleads guilty to a felony in a court of another state, or in a federal court, however, the statute still requires a "court of this state" to be the court that "adjudge[s] the defendant removed from office." Miss.Code Ann. § 25-5-1 (Rev. 2006). This may be done, pursuant to the United States Constitution, through "any court of this state" giving "full faith and credit" to the conviction of the officer in the court of another state or in a federal court. See U.S. Const. art. IV, § 1. However, it is my opinion that the "court of this state" that adjudges the officer removed from office based on a conviction in another state or in a federal court must still afford the defendant the minimum due-process protections of notice and an opportunity to be heard before removing him or her from office.
[10] As we stated in Mississippi Commission on Judicial Performance v. Martin, 995 So.2d 727, 731 (Miss.2008), "Section 177A clearly imposes upon this Court the duty, responsibility, and authority (after considering the recommendation of the Commission) to determine and impose punishment...."